# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| TIMOTHY JOHN PULLIAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:05CV01000 |
| ) | |
| SUPERINTENDENT OF HOKE CORRECTIONS,) | |
| DOCTOR WILSON, P.A. MACKEY, SGT. ) | |
| CROFF,[1] LIEUTENANT JACOBS, ASST. ) | |
| SUPT. WEBB, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

**Eliason, Magistrate Judge**

Plaintiff, a former prisoner of the State of North Carolina and current federal inmate, has filed an action under 18 U.S.C. § 1983. Generally, Plaintiff alleges that he was exposed to asbestos while working a prison job in Hoke Correctional Institution between February and May of 2003. He claims that this exposure caused him to have nasal sores, a sore throat, chest pains, and trouble breathing. He seeks several million dollars in compensatory damages from Defendants, who are medical workers, guards, and supervisory officials at Hoke Correctional. He blames them for various forms of inaction in relation to his alleged suffering. Defendant Wilson was previously dismissed from the case. (Docket Nos. 30, 39.) Defendant Mackey has now filed a

---

[1]The complaint quite clearly alleges a claim against 'Sgt. Croff." However, later pleadings by both parties indicate that this person's name is actually "Groff." Therefore, the Court will use that spelling rather than the one in the complaint.

motion to dismiss (Docket No. 26), while the remaining Defendants have filed a separate motion to dismiss (Docket No. 36).

## Facts

The facts, as alleged in the complaint, set out in a more definite statement filed by Plaintiff, and shown by Plaintiff's own exhibits, are as follows. Plaintiff was housed in the Hoke Correctional Institution from February 11, 2003, until May 29, 2003. During most of that time, he had a prison job cleaning and mopping. As part of his job, he washed and rinsed mops in a small room with overhead pipes. He alleges that those pipes were covered with asbestos, which was knocked loose on a regular basis whenever mop handles inadvertently struck it. (Docket No. 35 at 7.)

According to Plaintiff, he began suffering from various symptoms such as a sore throat, nasal sores, chest pain, and breathing difficulties. (Docket No. 2 at 3.) It is not clear how Plaintiff knew that the substance on the pipes was asbestos, but he came to believe that his exposure to asbestos was the cause of his symptoms. He then sought medical treatment. A grievance form dated April 30, 2003, asserts that Plaintiff filed a request to be seen on April 26, 2003, but had not been seen. (Docket No. 34, Exs.)

Medical records attached to the complaint indicate that Plaintiff was seen by medical personnel on May 2, 2003 and that he was given several prescriptions to help with sores, a sore throat, a cough, and headaches. (Docket No. 2, Exs.) He was also seen on May 6, 2003, May 13, 2003, and May 23, 2003. (Id.) The notes from

the May 6th examination reveal that he was treated for nasal sores, a sore throat, chest pains, and coughing up black particles. It was noted that Plaintiff had suffered these symptoms for 2 to 3 weeks and that he smoked cigarettes daily. He was diagnosed with herpes simplex, pharyngitis, and a rash by Defendant Mackey, who is a physician's assistant.

Notes from the examination on May 13th are brief and their meaning is unclear. It is also not apparent who made them. However, Plaintiff again saw Mackey on May 23rd. She noted that there was then only one sore on his nose, but that he still had nasal inflamation and drainage in his throat. She ordered a different prescription medication and lab tests. Six days later, Plaintiff was transferred out of Hoke Correctional Institution. There is no record or allegation that he had further contact with Mackey. A grievance response filed at another prison after Plaintiff left Hoke Correctional notes that x-rays and lab tests were normal and that there was no evidence that Plaintiff had been exposed to asbestos. Chest x-rays conducted in 2005 also showed his lungs to be "normal." (Id.)

Plaintiff's allegations of interactions with the remaining Defendants are even more sparse. He alleges in his complaint that he filed grievances and that the asbestos was investigated by unidentified persons. He states that he "discussed this matter" with Mackey, as well as Defendants Groff and Jacobs. He claims to have discussed it "indirectly" with Webb and Wilson. Plaintiff makes no mention of the Superintendent of the facility in the

factual allegations in his complaint. (Docket No. 2 at 3.)  He now admits that he never spoke with the Superintendent.  (Docket No. 41 at 2.)

Plaintiff expands his allegations somewhat in his more definite statement.  There, he alleges that he made attempts to let Webb and the Superintendent know of his problems.  He claims to have been told by Webb that there was nothing wrong with his health.  Therefore, he filed a grievance that he alleges Webb did not turn in to be processed. (Docket No. 35 at 5.)  This grievance is the one dated April 30, 2003 that claims that he had asked to see a doctor on April 26, 2003, but had not been seen.  Plaintiff asserts that he next told Defendants Groff and Jacobs about the problems so that he could have documentation of the alleged effects of the asbestos.  He states that he was "referred to medical but never seen" because staff members did not escort him there.  (Id.)

**Legal Standards**

Defendants seek dismissal on the ground that Plaintiff has failed to state a proper cause of action against any of them.  The motions are brought pursuant to Fed. R. Civ. P. 12(b)(6).  Such motions cannot succeed "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)(quoting Conley v. Gibson, 355 U.S. 41 (1957)).  The Court must assume that the allegations in the complaint are true and construe them in the light most favorable to plaintiff.  Id.  However, the Court does

not have to accept as true legal conclusions stated as facts. Further "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1965 (2007)(citation and footnote omitted).

## Discussion

The heart of Plaintiff's claim is his contention that he did not receive proper medical treatment for his allegedly asbestos-related ailments. Because Mackey is the only remaining Defendant who was directly involved in Plaintiff's treatment, the Court will address her motion first.

In order for Plaintiff to succeed in this lawsuit alleging lack of medical care, he must eventually show that the defendants were deliberately indifferent to a serious medical need. Mere negligence or malpractice is not enough. Estelle v. Gamble, 429 U.S. 97 (1976)(convict); Johnson v. Quinones, 145 F.3d 164, 166 (4th Cir. 1998); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990)(pretrial detainee).

As stated by the Fourth Circuit in Johnson, 145 F.3d at 167:

> To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison officials acted with a "sufficiently culpable state of mind." Wilson, 501 U.S. at 298, 111 S.Ct. at 2324; see Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir.1997); Williams, 77 F.3d at 761; Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.), cert. denied, 510 U.S. 949, 114 S.Ct. 393, 126 L.Ed.2d 341 (1993).

-5-

> With regard to inadequate medical attention, the objective component is satisfied by a serious medical condition. . . .
>
> The subjective component is satisfied by showing deliberate indifference by prison officials. . . . Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S.Ct. at 1979; see Amos, 126 F.3d at 610 (stating that "prison officials [must] know of and disregard an objectively serious condition, medical need, or risk of harm"). A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Farmer, 511 U.S. at 844, 114 S.Ct. at 1982; see Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997)(holding that prison official was not deliberately indifferent because he did not actually draw the inference that the prisoner was exposed to a specific risk of harm).

In order to meet this standard, Plaintiff must show that the treatment is grossly incompetent or inadequate to the extent that it shocks the conscience and seems fundamentally unfair. Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Deliberate indifference is manifested by actual intent or reckless disregard of substantial risks of danger but not mere acts of negligence. Id.

In evaluating a medical care case, the Court may rely on medical records to assess whether an evidentiary hearing is required, Blanks v. Cunningham, 409 F.2d 220 (4th Cir. 1969), and to determine whether the injury is in fact serious, West v. Keve, 571 F.2d 158, 162 (3d Cir. 1978). The Court may look at intake examinations, complaints made, treatment given and its timeliness, physicians' evaluations, and subsequent evaluations. Gray v. Farley, 13 F.3d 142, 146 (4th Cir. 1993)(pretrial).

Plaintiff's allegations and exhibits are woefully inadequate to state any claim against Mackey. It should first be noted that his interactions with her occurred on only two occasions separated by a very brief period of time. His records reflect that she first saw him on May 6, 2003 and last saw him seventeen days later on May 23, 2003. Both his allegations and his records are consistent in that she saw him for nasal sores, a sore throat, and chest and breathing problems. He told her that these were caused by exposure to asbestos, but she disagreed, attributing the problems to other causes. On the first occasion she prescribed him several medications to help with the problems and, when they were only partially successful in treating Plaintiff's symptoms, she prescribed further medication and tests when she saw him the second time.

The facts alleged by Plaintiff and revealed in his exhibits allege nothing more than a disagreement between he and Mackey over the cause of his symptoms. Petitioner's own documents reveal that Mackey did not ignore his requests for medical treatment and did give him treatment aimed at what she believed to be the cause of his problems. Plaintiff has alleged no facts showing that she callously disregarded his need for treatment. In fact, his exhibits show just the opposite. Not only this, but Plaintiff has not alleged facts indicating that her treatment was not proper even if Plaintiff was exposed to asbestos, much less that it was so grossly incompetent as to shock the conscience. The record is clear that Plaintiff showed some improvement after his first visit

to Mackey and that she ordered further treatments in an effort to help Plaintiff further. It also reveals that Plaintiff was medically documented not to show any evidence of exposure to asbestos on two occasions following her treatment. Finally, Plaintiff does not even theorize, much less state what more Mackey should or could have done for him to treat him even if he had been exposed to asbestos. He has not stated a claim against her and her motion to dismiss will be granted.

Plaintiff's claims against the other Defendants are even more tenuous. Plaintiff has not even alleged that the Superintendent of Hoke Correctional was even aware of his situation and claims. In order to be liable under Section 1983, a plaintiff must show that a defendant is personally involved and not just that he was a supervisor. Vinnedge v. Gibbs, 550 F.2d 926 (4th Cir. 1977). There are three elements necessary to establish supervisory liability under Section 1983:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices," and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. [citations omitted]

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

Pervasive and unreasonable risk requires evidence that the conduct is widespread, or at a minimum used on several occasions,

-8-

so that such conduct poses an unreasonable risk of constitutional violation.  Id.  Deliberate indifference is established by showing that the supervisor refused to take action in the face of documented widespread abuse or illegality.  Id.  Mere isolated incidents will not satisfy Plaintiff's burden of proof, nor is a supervisor required to anticipate misconduct.  Finally, Plaintiff must show that the supervisor's inaction, in fact, brought about the harm suffered by Plaintiff, which is at a minimum showing that the natural probable consequences of inaction would be the harm.  Id.  Plaintiff's does not allege the facts necessary to satisfy any of these elements as to the Superintendent.  Therefore, his motion to dismiss should also be granted.

Plaintiff alleges as to Webb that she showed deliberate indifference by failing to submit a grievance complaining that he was not being given requested medical treatment.  He further alleges that Groff and Jacobs did not properly escort him for medical treatment.  The problem for Plaintiff is that the grievance he gave to Webb was dated April 30, 2003.  The Court assumes that Plaintiff gave the grievance to Webb on that day.  His medical record shows that he was prescribed medicines two days later on May 2, 2003. He claims further that he talked to Groff and Jacob after he gave the grievance to Webb.  (Docket No. 35 at 5.)  Therefore, at most, two days passed between the time Webb became involved and the time Plaintiff received treatment.  With Groff and Jacob, the time from complaint to treatment was even less. Not only this, but

Plaintiff received medical treatment on three or four occasions between May 2, 2003 and May 23, 2003.

The timing of the events in the case strongly suggests that Webb, Groff, and Jacob did not ignore Plaintiff's complaints to attempts to get treatment, but instead may have aided him. Even if this is not so, Plaintiff has not and cannot allege facts showing any damages from their indifference. Whether or not they had anything to do with Plaintiff receiving treatment, he did receive it shortly after they were notified of the problems. He makes no allegations that the two or less days that passed between his complaints to Defendants and the beginning of his treatment somehow caused or worsened his condition or affected the success of his treatment.[2]

Finally, Plaintiff claims at several points that "the custody staff" should have sent him outside the prison for treatment and that they acted with deliberate indifference because they denied that his problems were being caused by exposure to asbestos. This conclusory allegation fails to assert a claim against any Defendant and also fails to state a claim. Supervisors cannot be expected to ensure physicians employ proper procedures and may not be held liable for treatment errors unless it can be shown they tacitly authorized known inadequate procedures. Id. An officer fulfills his duty by notifying medical personnel. He is not personally

---

[2]Nor could he given that he claims the treatment he did receive was incorrect. If he is right about the "treatment," Webb, Groff, and Jacobs could not have harmed him by failing to send him for what turned out to be the wrong "treatment."

-10-

responsible to provide medical care. <u>Maddox v. City of Los Angeles</u>, 792 F.2d 1408 (9th Cir. 1986). To establish liability of an officer, Plaintiff must show that upon an objective assessment, he had a sufficiently serious medical problem requiring treatment and that the officer was aware both of the need and of its seriousness, but acted with deliberate indifference in not procuring medical treatment. <u>Brice v. Virginia Beach Correctional Center</u>, 58 F.3d 101, 104 (4th Cir. 1995). Deliberate indifference is more than negligence and is akin to criminal law recklessness--not mere disregard of a great risk, but a conscious disregard constituting a gross deviation from the standard of care. <u>Id.</u> at 105; Kevin F. O'Malley, et al., <u>Federal Jury Practice and Instructions</u> § 17.01 (5th ed. 2000). Knowledge may be inferred from the obviousness of a serious injury. <u>Id.</u>

The bottom line is that prison officials without medical training are responsible for seeing that prisoners are attended to by medical professionals. They are not responsible for determining the course of treatment or for overruling the opinions of those professionals. Here, rightly or wrongly, the medical professionals determined that Plaintiff's symptoms were not caused by asbestos exposure. It was not Webb, Groff, or Jacob's job to overrule them. Plaintiff has not stated any claim for relief against them.

**IT IS THEREFORE ORDERED** that Defendant Mackey's motion to dismiss (Docket No. 26) is granted, that the Defendant

-11-

Superintendent, Webb, Groff, and Jacob's motion to dismiss (Docket No. 36) is granted, and that this action is dismissed.

_____
**United States Magistrate Judge**

November 20, 2007